Life Assurance Society v. Welch, *as Sup't, &c.*

THE ALLIANCE MUTUAL LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. ORRIN T. WELCH, *Superintendent of Insurance of the State of Kansas.*

1. INSURANCE ACT OF 1871; *Construction of §§ 20, 49, 52.* Under §§ 20, 49 and 52 of the insurance act as it was passed in 1871, a life insurance company desiring to discontinue its business in the state of Kansas was required to have on deposit in the state treasury not less than twice the amount of all debts, judgments and liabilities of every kind that were then due or that might become due against the company upon any contract or agreement made with any citizen or resident of the United States, including the face value of all outstanding policies, except that the insurance company was not required at any time to have on deposit with the state treasurer more than $100,000, and except that the insurance company was not required at any time to have on deposit with the state treasurer, as security for registered policyholders, more than an amount equal to the net present value of all the outstanding registered policies; and said § 52 applied only to registered policies.

2. LIFE INSURANCE COMPANY; *Amount of Securities.* In 1879 said § 49 was repealed, and another act was passed to take its place. (Ch. 115 of Session Laws of 1879; Comp. Laws of 1879, p. 496.) Under the laws as they then existed, a life insurance company desiring to discontinue its business in the state of Kansas was required to have on deposit with the state treasurer, as security for its general policyholders, an amount not exceeding $50,000, and not in any case exceeding, as security for its outstanding policies, more than double the amount of the present net value of such outstanding policies.

3. BUSINESS OF SUCH COMPANY, *How Discontinued.* In 1881 said § 20 was amended by adding thereto an additional proviso, and the original § 20 was repealed, (Laws of 1881, p. 217,) and under the laws as they then existed a life insurance company desiring to discontinue its business in the state of Kansas could do so by paying all its debts and liabilities, except such as resulted from outstanding policies, and by reinsuring all its policyholders in some other solvent insurance company or association, and by having and keeping on deposit with the state treasurer, as security for its policyholders, an amount of securities equal to the net present value of all its outstanding policies, or in other words, equal to what is known as the reserve liability on such outstanding policies.

4. PROCEEDINGS TO DISCONTINUE BUSINESS, *When not Destroyed.* Proceedings commenced by a life insurance company to obtain the right to discontinue its business in the state of Kansas and to withdraw its securities from the state treasury, commenced under § 20 before it was amended in 1881, are not destroyed or obliterated by the amendment of the section

and by the repeal of the original section; but the proceedings are as valid as though no repeal had been had.

5. SECURITIES, *Withdrawal of.* As a fact, the court finds that the plaintiff in this action has complied with all the requirements of § 20, as amended, and is entitled to withdraw its securities in accordance with that section.

6. ——— *Statute, Construed.* The law of 1879 with reference to insurance, and the amendment to said § 20, have application to policies issued prior to their enactment, as well as to policies issued since.

### *Original Proceedings in Mandamus.*

MAY 7, 1881, on the petition of the *Alliance Mutual Life Assurance Society of the United States*, an alternative writ of mandamus was issued out of this court and directed to *Orrin. T. Welch*, superintendent of insurance of the state of Kansas, commanding the defendant to deliver to such society certain securities belonging to it and deposited with the treasurer of state, or to show cause. The defendant answered, showing cause. The facts are stated in the opinion.

*Stillings & Stillings*, for plaintiff.

*W. A. Johnston*, attorney general, and *Thos. P. Fenlon*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus, brought. originally in this court by the Alliance Mutual Life Assurance Society of the United States, against Orrin T. Welch,. superintendent of insurance of the state of Kansas. The action is brought for the purpose of compelling the defendant to deliver up, in accordance with § 20 of the insurance law,. (Laws of Kansas, 1881, p. 217,) to the insurance company or society, all securities belonging to such company and deposited. with the treasurer of state, except an amount of such securities equal to what is known as the reserve liability on the outstanding policies of such company, which reserve liability the plaintiff claims is equivalent to the net present value of such outstanding policies.

It appears from the evidence in the case, that the company

or society has on deposit with the state treasurer, securities amounting to $101,682.50, as securities for policyholders in general, and $12,000 as securities for registered policyholders, and that the net present value of all the outstanding policies of such society amounts to $10,000.

The defendant resists the plaintiff's claim upon the ground that § 20, as it originally stood, and as amended in 1881, requires that there should remain on deposit with the state treasurer an amount of securities equal to double the amount of all the contract liabilities of the company due or to become due, including the face value of all the outstanding policies issued by the company. The sections of the statutes referred to by counsel, and supposed to have some application in this case, are sections 20, 49, 50, 51, 52 and 53 of the insurance law, as enacted in 1871, which read as follows:

"Sec. 20. When any company transacting the business of insurance under this act, within the state of Kansas, shall desire to discontinue its business, the superintendent shall, upon application of such company or association, give notice of such intention in a paper published and having general circulation in the county in which said company or its general agency is located, at least once a week for six weeks, the expenses of publication to be paid by the state superintendent, at the expense of such company. After such publication said superintendent shall deliver up to such company or association the securities held by him belonging to them, on being satisfied by the exhibition of the books and papers of such company or association, and on examination to be made by himself, or some competent disinterested person or persons, to be appointed by him, and upon the oath of the president or principal officer, and the secretary or actuary of the same, that all debts, judgments, and liabilities of every kind are paid and extinguished that are due or that may become due upon any contract or agreement made with any citizen or resident of the United States. And the said superintendent may also, from time to time, deliver up to such company or association, or its assigns, any portion of said securities, on being satisfied that any equal proportion of the debts and liabilities of every kind that are due or may become due upon any contract or agreement made with any citizen or resident of the United States, by said company or association, has

been satisfied: *Provided,* The amount of securities retained by him shall be not less than twice the amount of remaining liabilities." . . .

"SEC. 49. No company, formed under the laws of this state for the purpose of insurance on the lives of individuals, shall commence, or hereafter continue to do business, until such company has deposited with the treasurer of state, as provided by section sixteen of this act, for the security of its policyholders, the sum of one hundred thousand dollars in stock, or in notes or bonds secured by mortgages, or deeds of trust, of the description mentioned in the forty-eighth section of this act; and in all cases to be, or to be made to be, equal to stock producing six per cent. per annum, and not to be received at a rate above their par value, nor above their current market value. Such securities shall be held by said treasurer as security for the policyholders of said company, and for no other purpose; but so long as any company so depositing shall continue solvent, he may permit such company to collect the interest or dividends on its securities so deposited, and from time to time to withdraw any of such securities, or change the same, on replacing other securities of like value of those withdrawn, and of the character in which, by the provisions of this act, said company is allowed to invest its funds.

"SEC. 50. Whenever any such company shall deposit with the said treasurer the amount of the net present value of any policy or annuity bond, valued by the American table of mortality, interest at four and one-half per cent., in securities of the character in which, by the provisions of this act, insurance companies may invest their funds, it shall be the duty of said superintendent to issue to said company registered policies of insurance, or annuity bonds, of such denomination or amounts as the said company may require. Such policies and annuity bonds shall bear upon their face the words: ' This policy, among a limited number, is secured by pledge of public stocks, or bonds and mortgages,' with the seal of said department, and shall be countersigned by the superintendent or his authorized deputy.

" SEC. 51. The said superintendent of the insurance department shall, on delivering said policies or annuity bonds to any life insurance company, charge to said company the amount of the net present value of such policies or annuity bonds, valued as aforesaid, according to the amount and number of premiums paid annually, semi-annually and quarterly thereon, and the terms thereof. On the first day of January

of each and every year, or within sixty days thereafter, the said companies shall make a return to the superintendent of the insurance department, under oath of the president and secretary and actuary, of the exact condition of the registered policies received from the said department, and of the premium account of the said policies, and shall deposit with the said treasurer additional and similar securities to an amount equal to any increase of the value of the policies theretofore issued, and which shall remain in force, valued by the same rule as upon the issue thereof; and the securities thus deposited shall be held by the said treasurer in trust until the obligations of the said depositing life insurance companies respectively, under the said registered policies and annuity bonds, shall, to the satisfaction of the said superintendent, be fully liquidated, canceled, or annulled; and when any registered policy ceases, by lapse or otherwise, to become an obligation in whole or in part, the amount held on deposit to the credit of such policy shall be returned to said company, in proportion as said policy has ceased to be an obligation as aforesaid.

"SEC. 52. The said depositing companies may at any time withdraw any excess of securities above the net present value hereinbefore specified, upon satisfying the said superintendent by written proof, to be filed in the said department, that such excess exists, and shall be allowed to receive the interest on all securities deposited, and to exchange such securities by substituting other securities, such as by the provisions of this act said company is authorized to invest its funds in.

"SEC. 53. The said companies shall deliver to the superintendent of the insurance department the policies and annuity bonds, engraved and printed, or printed and written, in such manner as the said company and applicant for insurance may agree. On the receipt by the superintendent he shall cause them to be duly registered in proper books kept for that purpose in consecutive numbers, corresponding to the numbers on said policies and annuity bonds, shall cause his name or the name of his deputy to be inscribed on the policies and bonds, and affix the seal of the department to the same, and shall return the original policies to the said depositary companies respectively. It shall be the duty of the said superintendent to receive and destroy mutilated policies and annuity bonds issued to the said companies, and deliver in lieu thereof other policies and bonds of like tenor and date."

In 1879, § 49 of the insurance law was repealed, and the following sections were enacted in its place, to wit:

"Sec. 1. That every life insurance company heretofore or hereafter organized under the laws of this state shall, for each and every policy it shall issue on the life or lives of individuals, deliver to the superintendent of insurance, to be deposited with the state treasurer, as provided in section sixteen of the act 'to establish an insurance department in the state of Kansas, and to regulate the companies doing business therein,' the net present value of the policy so issued, valued in accordance with the rule prescribed in section fifty of said act for registered policies, in securities of the kind and character in which by law such company is or shall be allowed to invest its funds, which shall be received at a rate not above their par value, and to be equal to stocks producing six per cent. per annum.   Such securities shall be held by the state treasurer as security for the policy or policies for which the same shall be so deposited, so long as said policy or policies shall remain in force; but the superintendent of insurance, so long as said company shall remain solvent, shall permit such company to collect the interest or dividends on all securities so deposited, and from time to time to withdraw or change such securities, on replacing other securities of like value and character or [of] those withdrawn.

"Sec. 2. The aggregate of deposits required of any life insurance company organized under the laws of this state shall not be less than fifty thousand dollars, unless the total liabilities of such company to its policyholders do not exceed twenty-five thousand dollars.   In case the liabilities of any such company to its policyholders shall at any time be less than twenty-five thousand dollars, the deposits shall be and remain at not less than two dollars in amount for every dollar of such liability.

"Sec. 3. When the liability of any policy shall cease, the security deposited therefor, as hereinbefore provided, shall be returned by direction of the superintendent of insurance to the company depositing the same; and whenever the aggregate of such securities shall exceed the liability of said company on such secured policies, the surplus of securities shall be returned to said company.

"Sec. 4. Section 49 of chapter 93 of the Laws of 1871, relating to the insurance department and insurance companies, and all provisions of said act or of other acts inconsistent with the provisions of this act, are hereby repealed."

In 1881, § 20 of the insurance law was amended, and the

original § 20 was repealed. Section 20, as amended, reads precisely the same as the original section did, except a proviso is added to the section, which reads as follows:

"*Provided, further,* That if the outstanding policies of such company or association have or shall be reinsured in any other solvent insurance company or association, an amount of securities for such policy liabilities equal to what is known as the reserve liability on such outstanding policies shall be retained for such policy liabilities, and no more; and upon such reinsurance and the payment of all debts of the company other than reinsured outstanding policies, no further report or other proceedings shall be required of the company so ceasing to do business."

The first question presented in this case involves the construction or interpretation of § 20 of the insurance act as it

1. Insurance act of 1871; construction of §§ 20, 49, 52.

was passed in 1871. The defendant claims that where a life insurance company desires to discontinue its business under said § 20 as it then read, the company must allow an amount of securities to remain on deposit with the treasurer of state not less than twice the amount of all debts, judgments and liabilities of every kind that are then due or that may become due against the company upon any contract or agreement made with any citizen or resident of the United States, including the face value of all outstanding policies, except that under § 49 of said act the insurance company is not required at any time to have on deposit with the state treasurer more than $100,000; and except that under § 52 of said act the insurance company is not required to have on deposit with the state treasurer as security for registered policyholders more than an amount equal to the net present value of such registered policies. And the defendant further claims that said § 52 applies only to registered policies.

On the other hand, the plaintiff in this case claims that the construction given to § 20 and § 52 by the defendant is erroneous, claiming that said § 20 does not include the face value of outstanding policies, and that § 52 includes all policies issued by the company, whether registered or not.

We think the construction given to said § 20 by the defendant is correct, and its terms seem so plain to us that we could not make it plainer by any argument. We also think that the construction given to § 52 by the defendant is also correct; and this opinion we found not only upon the words of the section itself, which words we think are inconsistent with any other construction, but we also found our opinion upon the location of the section in the act. The sections immediately preceding § 52 and the first section immediately succeeding it, evidently refer to registered policies, and not to general policies. But the law as passed in 1871 was modified in 1879. Section 49 of the Law of 1871 was wholly and absolutely repealed in 1879, and another act was passed to take its place. (Ch. 115 of the Session Laws of 1879; Comp. Laws 1879, p. 496.) This act provided that an amount should be deposited with the treasurer of state by the insurance company equal to the net present value of every policy issued by the company, but that not less than $50,000 should be so deposited, unless the total liabilities of such company to its policyholders did not exceed $25,000; and in case such liabilities were less than $25,000, then the deposit should not be less than two dollars in amount for every dollar of such liability. This virtually placed every policy issued by the company on an equal footing with the registered policies provided for by §§ 50 to 53 of the insurance act. But as will be seen, this act of 1879 further modified § 20 of the insurance act; for § 20 could not apply with all its force so as to require securities in double the amount of the liabilities to be deposited or retained by the state treasurer where the amount of liabilities was over $25,000, and the amount of deposits not to exceed $50,000. Nor could there be securities retained by the state treasurer in double the amount of the face value of the policies, for the law of 1879 did not under any circumstances require that more than an amount of securities double the amount of the net present value of the outstanding policies should be so

<div style="margin-left:2em">2. Life insurance company; amount of securities.</div>

retained. In 1881, § 20 of the insurance act was still further modified, by adding to it the following proviso:

"That if the outstanding policies of such company or as-sociation have or shall be reinsured in any other solvent insurance company or association, an amount of securities for such policy liabilities equal to what is known as the reserve liability on such outstanding policies shall be retained for ·such policy liabilities, and no more; and upon such reinsur-ance and the payment of all debts of the company other than reinsured outstanding policies, no further report or other pro-ceedings shall be required of the company so ceasing to do business."

The terms of this proviso also seem too plain for interpretation. They interpret themselves. We might say, however, that the words, "What is known as the reserve liability on such outstanding policies," mean the net present value of all such outstanding policies, and not their face value; and the words evidently are used in connection with § 52 of the insurance act and chapter 115 of the act of 1879.

Now if we interpret this proviso to § 20 correctly, then the plaintiff has a right to withdraw all securities deposited by it with the state treasurer, except an amount equal to the net present value of all its outstanding policies — provided, however, that it has fully complied with all the requirements of said § 20 and its proviso.

3. Business of such company, how discontinued.

It is admitted by the parties that there are no other debts or liabilities outstanding against the plaintiff, and that it· has no outstanding liabilities except such as may result from its ·outstanding policies. Defendant also, through the attorney general, claims that none of the securities can be surrendered in the present case, for the reason that all the steps taken or proceedings had for the purpose of accomplishing the discontinuance of the plaintiff's business were taken and had under § 20 as it originally existed, and before it was amended in 1881; and that as § 20 as it originally existed was repealed in 1881, all said steps and proceedings were swept from exist-

ence and wholly obliterated.    This we think cannot be true,
for § 20 before it was amended was precisely the
4. Proceedings
   to discontinue   same as it now is since it was amended, except
   business.
that the proviso above quoted has been added
thereto; and in this state repeals of statutes do not have such
sweeping effects as is claimed by the defendant's counsel.    In
this state "the repeal of a statute does not  .  . affect
. .  any proceeding commenced under or by virtue of the
statute repealed.    The provisions of any statute, so far as they
are the same as those of any prior statute, shall be construed
as a continuation of such provisions, and not as a new enact-
ment." (Comp. Laws of 1879, p. 919, § 1, subdiv. 1.)

The defendant's counsel also claims that the reinsurance
made between the plaintiff in this case and the Pacific Mu-
tual Life Insurance Company of California, was not an insur-
ance of the policyholders, or of the outstanding policies held
by them but was in fact and in reality only an insurance
of the plaintiff itself.    And he further claims that the policy-
holders of the plaintiff could not under any circumstances
have any right of action against the Pacific Mutual Life
Insurance Company under and by virtue of the contract.    In
this we think that counsel is also in error.    The contract
between the two insurance companies not only insures the
plaintiff, but it expressly and in the clearest and most ex-
plicit terms also insures all the policyholders of the plaintiff,
and in direct and express terms authorizes the policyholders
to sue the Pacific Mutual Life Insurance Company for
any defaults made by such company to their injury.    But
we suppose that the point relied on by counsel, is not that the
two companies did not attempt to insure the policyholders of
the plaintiff, but that they could not either in fact or in law
do so, even if they so desired and so attempted; and that, as
the policyholders were not privy to the contract or to the
consideration thereof, they would not have any rights under it.

Now whatever may be the rule in other states, it is well
settled in this state that third parties not privy to a contract,
nor privy to the consideration thereof, may sue upon the con-

41 — 26 KAS.

tract to enforce any stipulations made for their especial bene-
fit and interest.   (*Anthony v. Herman,* 14 Kas. 494; *Floyd
v. Ort,* 20 Kas. 162, 164, and cases there cited.)

It is further claimed by counsel for defendant, that as all
the policies were issued prior to the year 1879, the laws then
in force entered into and became a part of the contract between
the plaintiff and the policyholders; and that the policyholders,
by virtue of such contract, obtained a vested interest in all the
securities deposited with the state treasurer; and that such in-
terest could not afterward be disturbed or abridged by any sub-
quent legislation.   This, we think, raises the most difficult
question in the case.   It is not claimed that the policies on
their faces mention or refer to any of the securities deposited
with the state treasurer; but it is claimed that the law in force
when the policies were issued became a part of the contract
evidenced by the policies.   This, we think, is true to a certain
extent, but not to the extent claimed by counsel.   The law in
force at the time these policies were issued, including § 20
and § 49 of the act of 1871, did not purport to vest any inter-
est in the policyholders in the securities deposited with the
state treasurer, and it certainly did not purport to give the
policyholders any lien upon such securities.   Under the law
as then in force, the insurance company had a right to change
its securities deposited with the state treasurer whenever it
chose to do so.   It had a right to withdraw any of its secur-
ities, simply depositing others in their place; so
that evidently it was not the intention of the leg-
islature to give the policyholders any interest in

5. Securities,
   withdrawal
   of.

any particular securities, or to give them any interest in any
particular amount of the securities deposited.   We are now
speaking of the general policyholders, and not of the regis-
tered policyholders, for the registered policyholders have no
interest in this question; their security will remain the same
even if all the securities are withdrawn from the state treasury
which the plaintiff now asks to withdraw.   It is, then, only
the general policyholders who have any interest in this ques-
tion.   Of course the insurance company, whenever it should

see proper to withdraw its securities from the state treasury under the law of 1871, would have the right to use such securities as it saw fit—it could sell them, or collect them and use the proceeds for any purpose which it might choose.  The policyholders would have no interest whatever in either the securities withdrawn or in their proceeds.  The first policyholder who obtained a policy in this insurance company was, in one sense, secured by the amount of $100,000 in securities deposited with the state treasurer on whatever amount of insurance he took, whether great or small; but as the policies issued by the company increased in number and amount, his relative or proportionate security would become less.  Whenever the company should issue policies to the amount of $1,000,000 in the aggregate, then his proportionate security would be only ten cents on the dollar; but suppose the company should issue policies to the amount in the aggregate of $100,000,000, (and there are a few insurance companies in this country that now have outstanding policies exceeding that amount,) then his proportionate security on his policy would be only one-tenth of a cent on the dollar.  The Mutual Life Insurance Company of New York now has outstanding policies to the amount of over $300,000,000.  It will therefore be seen that the policyholders have no vested interest in any particular security, or in any particular amount or proportion of the securities deposited with the state treasurer; and we suppose it will not be claimed that the policyholders have a vested interest in the place where the securities are to be deposited—that is, we suppose that the law might be so changed as to require the securities to be deposited with some other officer, as the secretary of state, or auditor, or governor, or superintendent of insurance, or even that a proportionate amount of the securities be deposited in each county where the company should do business.  Foreign insurance companies are allowed to deposit their securities in the states where the companies are created. (Comp. Laws of 1879, p. 501, § 63.)  But it may be said that the policyholders have, by virtue of their policies and the law of 1871, a vested interest in

some kind and some amount of securities. This may be true; but the present law provides for securities, and provides that the securities shall be equal to the net present value of the outstanding policies; and such security is vastly better than $100,000 of securities for $100,000,000 of outstanding policies, or for even $1,000,000 of outstanding policies. But this is not the only security provided for by the present law. The present law provides that the policyholders shall also be insured in some solvent insurance company, and the policyholders or beneficiaries have this additional company to look to for payment of the benefits provided for by their policies. The company which originally issued the policies is not dissolved by ceasing to do business in accordance with § 20 of the insurance act; but it still continues in existence and liable for all its debts and liabilities, and the company in which the policyholders are reinsured is simply an additional security for the final payment of the policies. Under the present law, therefore, the policyholders have the following security for the final payment of their policies: The original company which issued the policies; the securities deposited with the state treasurer by such company, amounting to the net present value of all outstanding policies; and the insurance company in which the policyholders are reinsured, with all the securities which they have deposited in this state or elsewhere. We might also consider the payment of the annual premiums by the policyholders as an additional security for the final payment of their policies; for if they continue to pay up to the maturity of their policies, they will in all probability have paid in the aggregate (including the interest on their payments) an amount largely more than will be due in the aggregate on all their policies, when the benefits on their policies are finally paid.

Now admitting, for the purposes of this case, that the policyholders are entitled by law to some kind of security, and

6. Statute, construed.

that they have a vested interest therein, still we cannot say, as a matter of law, that the legislature by its acts of 1879 and 1881 has not furnished the policyholders

with ample security; and thererefore we cannot say, as a matter of law, that said acts are invalid as to the present policy-holders; and therefore we must hold that said acts are valid.

This, we think, disposes of this case. The prayer of the plaintiff will be allowed, and judgment rendered accordingly.

All the Justices concurring.