## WHITNEY v. AMERICAN INS. CO. et al.

### S. F. No. 840; January 30, 1899.

#### 56 Pac. 50.

**Insurance.—A Notice of a Change of Title may be Given to the** person who signed the policy as insurer's agent when the policy was issued, where the insured had no knowledge that such person had ceased to be the insurer's agent.

**Insurance—Notice of Change of Title.—Under a Clause in a Policy Insuring a Mortgagee,** providing that the insurance should not be invalidated by the mortgagor's neglect, provided the mortgagee notified insurer of any change of ownership coming to his knowledge, and had permission for such change indorsed on the policy, a change of ownership to the mortgagee's knowledge does not invalidate the policy, if the change did not increase the risk, though he gave insurer no notice thereof, the provision respecting the giving of notice by him being merely directory.[1]

**Insurance.—An Insured may Make Proofs of Loss to One** who had assumed insurer's liabilities, where insurer had authorized him to receive them, and had withdrawn all its own agencies from the state.

**Reinsurance.—A Contract of a Company to Pay Losses Under Policies** issued by another company as promptly as losses under its own policies is not a contract of reinsurance, under Civil Code, section 2646 et seq., and hence the company is directly liable to the insured.

APPEAL from Superior Court, City and County of San Francisco.

Action by A. L. Whitney against the American Insurance Company and another. From a judgment for plaintiff and

---

[1] Cited in the note in 135 Am. St. Rep. 757, on fire insurance as security for a mortgagee or other lienholder.

an order denying a motion for new trial defendants appeal. Affirmed.

Jas. A. Watt and John R. Aitken for appellants; Mullany, Grant & Cushing for respondent.

McFARLAND, J.—This is an action upon a fire insurance policy, in which the loss is payable to the plaintiff, as mortgagee of the land upon which the building insured was situated. Judgment was for plaintiff in the superior court, and from the judgment, and an order denying a new trial, the defendants appeal.

There is no charge of fraud or of any misconduct by the respondent which was material to the risk, and there is no apparent reason on the face of the record why, upon principles of justice and fair dealing, the loss should not have been paid. Appellants contend that they are shielded from payment by certain asserted legal defenses. These asserted defenses are substantially as follows: First, that before the fire there was a transfer of the title of the property insured, without notice thereof to appellants; second, that proofs of loss were not made to the proper party; and, third, that the Northwestern National Insurance Company was a mere reinsurer of the American Insurance Company, that there was no privity of contract between the respondent and the Northwestern, and that, therefore, respondent was not entitled to judgment against the Northwestern Company. We do not think that either of these grounds for a reversal is tenable.

1. The policy in question was issued by the appellant the American Insurance Company on September 6, 1893. (For convenience, we will call one of the appellants the "American," and the other the "Northwestern.") The premises insured were situated in Los Angeles. At the time of the issuance of the policy the legal title to the land was in James E. Gordon, who had purchased it from J. F. Sullivan, a resident of San Francisco. The amount of the policy was $1,000, and at this date the respondent held a mortgage on the premises, executed by said Sullivan, for a greater amount than $1,000; and the loss, if any should occur, was made payable to the respondent, as mortgagee. There was a mortgage clause in the policy, which provided "that this insurance, as to the interest of the mortgagee or trustee only

therein shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, or by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy: . . . . provided, also, that the mortgagee or trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge, and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy.'' There was no provision that a failure by the mortgagee to give such notice should avoid the policy. In December, 1893, Gordon conveyed the property back to Sullivan, and assigned the policy to him, and this transfer and assignment were approved by the company. On May 19, 1894, the building insured was destroyed by fire. A short time prior to that event, to wit, on the 9th of May, 1894, one Beach, who was a tenant occupying the premises insured, had some negotiations with Sullivan, in San Francisco, looking to an exchange of some of his property with Sullivan for the insured property at Los Angeles; and, as a result of those negotiations, Beach requested Sullivan to make a deed of the insured premises to one Taylor, who lived at Los Angeles. Beach expected that Taylor would accept a deed of these premises in satisfaction of certain claims which Taylor had against Beach. Sullivan executed the deed to Taylor, and Beach sent it to the county recorder at Los Angeles, who recorded it; but Taylor repudiated the transaction, and refused to accept the deed. A day or two afterward, Sullivan wrote to the respondent that he had made the deed to Taylor. Thereupon the respondent looked over the records in Los Angeles, and could not find that any such deed had been recorded. Respondent informed J. K. Mulkey, who was the agent of the American company at the date of the issuance of the policy, and who signed the policy as such agent, and who respondent had every reason to believe was still the agent of such company, of the letter which he had received from Sullivan about the sale of the premises to Taylor; and Mulkey told the respondent that he thought no change would be advisable, as there was no evidence of the actual transfer. Mulkey had also received a notice from Beach that the property had been deeded to Taylor. Under these circumstances, we see no reason whatever for holding that the policy had been forfeited on ac-

count of respondent's conduct with respect to notice of the transfer. Owing to the refusal of Taylor to accept the deed, it is doubtful if any transfer of the title ever took place, although it is not necessary to absolutely determine that point. Respondent, at all events, gave all the notice which he could be fairly expected to have given. The provision in the policy that respondent should inform the insurance company of such transfer of the property as should come to his knowledge is only directory, and his failure to do so is not declared to be such a violation of the policy as would avoid it; and his failure to give such notice would have been material only where it would have caused prejudice or increased risk to the insurance company, and there is no pretense of such a thing here. It may be observed, as appellant seems to attach some importance to the fact, that, although Beach held a general power of attorney from Taylor, the transaction between Beach and Sullivan was one which Beach entered into on his own behalf, and not in his capacity as attorney in fact for Taylor.

2. On the next day after the fire, respondent called on said Mulkey, as agent of the American company, and informed him of the fire. Thereupon, for the first time, Mulkey stated that he was no longer agent of said company, that said company's policies on this coast had been assumed by the Northwestern Company, and that Betts & Silent, of Los Angeles, were the agents. Soon afterward Mr. T. A. Nerney sought out the respondent, and informed him that he was the agent and adjuster of the Northwestern, and took him to the office of Betts & Silent, and there prepared and caused proof of loss to be made in due form, which proof of loss he sent to George W. Turner, at San Francisco, who was the general agent for the Northwestern; and he (Nerney) assured respondent that the money due for the loss by fire would be paid. It is a fact that Nerney was the agent and adjuster of the Northwestern at Los Angeles, and that Turner was the general agent of the Northwestern. The American and Northwestern were both foreign corporations. These further facts appear: In March, 1894, a written contract was entered into between the American and the Northwestern, by which, in consideration of certain money and property given by the former to the latter, and in consideration of the payment by the American to the North-

western of certain pro rata unearned premiums under each and every policy of the American in force in certain states and territories, including California, the Northwestern assumed all the liabilities of the American upon all its policies, among which it is admitted the policy in question in this action was included. By that contract the Northwestern covenanted that it "will make as prompt adjustments and payments of loss, if any, under any and all of its policies of the said American Insurance Company, as it would under its own policies, if issued direct to said assurer." Thereafter all the agencies of the American company in California were revoked, and the Northwestern took the entire control and management of all matters arising out of said policies, and the adjustment of losses in cases of fire, and the American practically disappeared from the business. Several years before that, the American company had filed in the office of the insurance commissioner of this state a designation of one Ed. E. Potter as its agent; but, a few days after the fire, Sullivan went to see Potter, who informed him that he was no longer agent of the American, except perhaps for the purpose of settling with the Northwestern company. The proofs of loss above referred to were made within five days after the fire, and were directed formally to the American company, but were sent, as above stated, to Turner. Turner testified that, after the contract between the Northwestern and the American above noticed, "I had charge of the business covered by that contract, including the risk of policy sued for here, and now before this court." He also testified that Nerney was the agent of the Northwestern, and had charge at Los Angeles, and that, "as to this policy sued on, I began to handle it about a week or ten days after the fire. Just as soon as I received the proof of loss from Mr. Nerney, I went to work on the subject, and called on Mr. Sullivan." He further testified that "Mr. Potter had called in all the agencies of the American Insurance Company before the fire occurred for the loss for which this action is prosecuted," and that the Northwestern, "through its agents and under my general agency, had been attending to the affairs under the policies of insurance issued by the American Insurance Company's agents under this agreement since about April 1, 1894, and it was under that agreement, and in the duty and in the pursuance of the duties which

were assumed under that agreement, that I went to see Dr. Sullivan in regard to this policy; and Mr. Nerney attended to the taking of the proofs of loss on behalf of the American Insurance Company in Los Angeles from A. L. Whitney, the plaintiff herein. I, as agent of the Northwestern National Insurance Company, had authority to receive the proofs of loss under this policy of the American Insurance Company. I am aware that the fire occurred on May 19 or 20, 1894, under the policy sued on in this action." But, after Turner "began to handle" the matter, he learned from Sullivan that the latter had made a deed to Taylor, Sullivan supposing at that time that the title had passed from him to Taylor through the deed which he had executed to the latter; and thereafter Turner returned the proofs of loss, and the defenses set up in this case seem to have been determined upon. We have stated these facts somewhat fully here, because they are applicable to the third point made by the appellants. Upon these facts, we think that the proofs of loss were properly made.

3. Appellants have argued the third point as though the contract above referred to between the two insurance companies, and their subsequent action carrying it out, amounted to nothing more than the dry, naked contract of reinsurance, under section 2646 et seq. of the Civil Code. But the facts hereinbefore stated show a contract much broader than a mere technical reinsurance. The Northwestern, under the situation here shown, was directly liable to the plaintiff, upon the principle declared and illustrated in Morgan v. Mining Co., 37 Cal. 534; Flint v. Cadenasso, 64 Cal. 83, 28 Pac. 62; Lockwood v. Canfield, 20 Cal. 126; Arnold v. Lyman, 17 Mass. 400, 9 Am. Dec. 154. As was said in Morgan v. Mining Co., supra, "the companies agreed, and the plaintiff manifests his assent by bringing the action." In Arnold v. Lyman, supra, the court said: "The promise being not to Hutchins expressly, but general in its form, the assent of the creditors made them parties to the promise; and this assent is sufficiently proved, as respects the plaintiffs, by their bringing an action upon the contract." "The law creates the privity necessary" for the maintenance of this action.

Appellants make some points as to the insufficiency of the evidence to justify some of the findings; but the findings attacked are either unimportant, under the views above ex-

pressed, or the objections thereto have been substantially noticed above. The finding which is most objected to is the one to the effect that Sullivan remained the owner of the property; but, as hereinbefore stated, that matter is unimportant. The finding "that plaintiff has duly performed all the conditions and covenants on his part to be performed under said policy of insurance" is fully sustained by the evidence as hereinbefore stated. The other objections to the findings are unimportant and immaterial. The judgment and order appealed from are affirmed.

We concur: Temple, J.; Henshaw, J.