[S. F. No. 15335. In Bank.—March 31, 1936.]

COLUMBIA CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, BERTHA R. RIDGWAY et al., Respondents.

Redman, Alexander & Bacon, R. P. Wisecarver and A. B. Weiler for Petitioner.

Everett A. Corten for Respondents.

WASTE, C. J.—The question to be considered in this cause, which involves a dispute between the state insurance commissioner and a surety on a bond executed to qualify an indemnity company writing workmen's compensation insurance to do business in this state, is whether or not the Industrial Accident Commission has any jurisdiction to make an award against the surety in an amount representing an unpaid compensation award previously rendered by the Commission against certain workmen's compensation carriers. The insurance commissioner, joining, as trustee, with the beneficiary of the award, in turn sought an award against the Columbia Casualty Company, petitioner here, on the ground that the casualty company was surety for the Independence Indemnity Company, one of the workmen's compensation carriers. The bond in question has nothing to do with the employer or the employee in the cause, but, as stated, is one given in order to qualify the indemnity company to do business in the state

of California, and is known as a "compensation bond". Briefly, the facts are:

On January 29, 1931, the original Independence Indemnity Company (hereinafter referred to as the old Independence), a Pennsylvania corporation, was engaged in the business of writing workmen's compensation insurance in the state of California, and had in force and effect a workmen's compensation policy covering the Halfhill Packing Company. On that date, Ridgway, an employee of the packing company, was killed, and a death benefit in the sum of $5,150 was subsequently awarded by the Industrial Accident Commission to his widow, Bertha R. Ridgway. On July 1, 1931, Columbia Casualty Company gave a compensation bond, as provided by the laws of this state (Stats. 1917, chap. 200, p. 292), on behalf of the Independence Indemnity Company, in the amount of $106,919.66, to enable the indemnity company to write compensation insurance for the period of one year.

Thereafter, and on September 16, 1931, the Independence company merged with the Commonwealth Casualty Company, another Pennsylvania corporation, the resultant company being and thereafter referred to as a new Independence Indemnity Company. The new company did not comply, and never has complied, with the laws of California for entry to do business in this state. On July 1, 1932, the petitioner here, Columbia Casualty Company, issued a bond on behalf of Independence Indemnity Company in the amount of $100,000 for a period of one year. This bond was numbered with the same number as its previous bond issued on behalf of the old Independence, above referred to, and was filed with the respondent insurance commissioner. The casualty company, it claims, did not know of the existence of the new Independence and alleges that, in executing the second bond, it intended only to retire its first bond given the year previous, and to substitute the new bond in its place and stead for the purpose of enabling the old Independence company to do business in this state. The new Independence company thereafter transferred all of its assets to the International Reinsurance Corporation. These two corporations, for a period, paid the amounts of weekly compensation due to Bertha R. Ridgway, and she acknowledged and gave receipts for the payments. Before June, 1933, these various companies were placed in the hands of receivers. There was no estate of the new Indepen-

dence company, its assets, as above stated, having theretofore passed to the International Reinsurance Corporation. In the meantime, the International corporation had in force and effect a bond, as required by the statutes of 1917, *supra,* given by the Union Indemnity Company, approved by the insurance commissioner.

On Ridgway's death, his widow filed a petition with the Industrial Accident Commission, joining the International Reinsurance Corporation as defendant, and asking for an award against it. The Commission made and entered an award against both the Independence Indemnity Company and the International Reinsurance Corporation, holding each liable for the full commuted value of the compensation award in the sum of $2,257.66. The state insurance commissioner, with whom the applicant joined, then intervened as trustee for the applicant and beneficiary against the Columbia Casualty Company, as surety, praying that it be required to pay the amount of the award on the ground that the award against the Independence Indemnity Company and the International Reinsurance Corporation had become final, no application for a rehearing having been filed by the defendants. As a result of this application, an award was made in favor of the insurance commissioner, as trustee for Bertha R. Ridgway, and against the petitioner, the Columbia Casualty Company, in the sum of $2,257.66. Petition for rehearing before the Commission was denied. It is to review these proceedings that the petitioner seeks this writ of review.

Preliminarily, the petitioner contends that the Industrial Accident Commission is a court of limited jurisdiction, and does not have jurisdiction over this case, which involves a claim by the insurance commissioner, as statutory trustee and obligee of a qualifying insurance carrier's bond, against the surety on that bond, the claim being disputed by the surety on the ground that there is no bond in force and effect. We are of the view that the contention cannot be sustained.

The instant proceeding is one instituted by the widow of a deceased employee, joined by the insurance commissioner as trustee, against the surety of the carrier concerning the non-payment of compensation by the carrier, and, in lieu of payment by the carrier, for payment by its surety. We are of the opinion that the facts fall within both the language and the intent of section 21 of article XX of the Constitution.

By the terms of the section, the legislature is "expressly vested with plenary power . . . to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment . . . " By the further terms of the provision, a complete system of workmen's compensation is defined to include "full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage *in all its aspects*, . . . [italics added] and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government". Further, the legislature is vested with plenary powers "to provide for the settlement of *any* disputes arising under such legislation . . . by an industrial accident commission . . . " The constitutionality of the Workmen's Compensation Act of this state (Stats. 1913, p. 279) was upheld by this court in *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [151 Pac. 398], and in later decisions.

In order to more fully protect beneficiaries under workmen's compensation insurance policies against default or insolvency of insurance carriers, of which there were and are many, the legislature enacted the statute of 1917 (chap. 200, p. 292), requiring insurance carriers to provide security for the payment of workmen's compensation insurance when awarded. By the terms of this act, carriers are required to file a bond with the insurance commissioner of this state, in favor of the insurance commissioner as a trustee for the beneficiaries of awards of compensation rendered by the Industrial Accident Commission, such bond to be executed by the carrier and some surety company or companies approved by the commissioner and authorized to transact the business of suretyship in this state. Such bond, by its terms, must provide that, in the event the insurance carrier fails to pay any award or awards which may be rendered against it by the

Industrial Accident Commission, the surety will forthwith pay to the extent of its liability under the bond the award or awards to the insurance commissioner as trustee for the beneficiaries. The bond must also provide that, in the event the insurance carrier shall suspend payment or become insolvent or a receiver be appointed, the surety will pay the awards without regard to any proceedings for the liquidation or reinstatement of the insurance carrier. In the event the insurance carrier shall fail to pay the award, and as a cumulative remedy only, an award may be rendered by the Industrial Accident Commission against the surety for the beneficiary of the award, without notice to the surety, for the amount of the unpaid portion of the award against the carrier. By the express terms of the act, the Commission is vested with the same full power, authority and jurisdiction as to such awards against sureties as it has over insurance carriers. The act for the protection of beneficiaries of workmen's compensation insurance policies contains further provisions for a complete scheme for the enforcement of claims for awards made against sureties. In view of the plain provisions of the statute, we find no room for an argument that the Industrial Accident Commission was without jurisdiction in the present case. We must hold that it had jurisdiction.

Relying on the fact that this court has consistently held that the Industrial Accident Commission has jurisdiction only over disputes arising between an employer and an employee concerning the payment of compensation (see *Commercial Casualty Ins. Co.* v. *Industrial Acc. Com.*, 211 Cal. 210 [295 Pac. 11]), the petitioner argues that the legislature has gone beyond the constitutional limitation in an attempt to give the Commission jurisdiction in this and similar matters. We cannot accept the proposition. The basis of this proceeding is not an alleged independent right of the beneficiary of a policy issued by the insurance carrier, but the basic liability is in fact that of the employer to the relative of the deceased employee. The Industrial Accident Commission having jurisdiction has adjudicated the question of the liability of the employer's insurance carrier and also that of its surety to pay the obligation which the carrier assumed for the employer. The procedure provided by the act for the protection of beneficiaries of workmen's compensation insurance policies against the default or insolvency of insurance carriers issuing such

policies (*supra*) is simply one method of securing the payment of compensation, and therefore within the grant of power to the legislature to enact the statute. This phase of the question was considered and, in effect, was disposed of by this court in *Hartford Acc. etc. Co.* v. *Industrial Acc. Com.*, 216 Cal. 40 [13 Pac. (2d) 699].

The other contention of the petitioner is that there is no liability in the premises on the bonds given by it to enable the Independence Indemnity Company to qualify in order to transact business in California. In effect, it argues that the bonds given by it for that purpose covered the old Independence Indemnity Company, which ceased to exist prior to the present alleged default in payment of compensation; and the new Independence was a separate corporation not covered by the bonds. The effect of the consolidation and subsequent transactions, hereinbefore set out, was that the assets and obligations of the old Independence and the Commonwealth passed to the new Independence Indemnity Company, whereupon the old Independence ceased to do business as a corporation; yet, it is alleged, without requiring a legal entry into this state, the insurance commissioner allowed the new Independence to write compensation business in the state of California during the year beginning July 1, 1932. On that date, the petitioner, Columbia Casualty Company, issued, on behalf of Independence Indemnity Company, the required bond to enable it to do business in this state for a period of one year. Thereafter, and during the year, the Independence Indemnity Company (the new Independence) conveyed and sold all its assets to the International Reinsurance Corporation, a Delaware corporation. Petitioner, the Columbia Casualty Company, was given no notice of this merger, and did not know of it until the default in payments hereinafter noted. The merger was approved by the insurance commissioner of California. From and after the acquisition of the new Independence, the International Reinsurance Corporation carried on the business of workmen's compensation insurance in the state of California under the style of Independence Underwriters of International Reinsurance Corporation. When the old Independence Company ceased to do business, the new Independence Company made the weekly payments to Bertha R. Ridgway called for by the award made to her by the Industrial Accident Commission, and continued to do so until

October 21, 1932. From and after that date the International Reinsurance Corporation, carrying on the business of workmen's compensation insurance in California, paid the weekly compensation to Mrs. Ridgway, to and including March 8, 1933, at which time the payments were discontinued and the default resulted. Shortly thereafter, the International Reinsurance Corporation, as well as its surety, the Union Indemnity Company, was placed in the hands of a receiver. There was no estate of the new Independence, its assets having all passed to the International Corporation by the merger of October 31, 1932.

It was under these circumstances that the insurance commissioner, as trustee, intervened in the proceeding before the Industrial Accident Commission in which an award had been made to Bertha R. Ridgway for the death of her husband, a large portion of which had not been paid. As a result of the intervention, an award was made in favor of the insurance commissioner, as trustee for Bertha R. Ridgway, and against the Columbia Casualty Company, the petitioner here seeking this review.

The foregoing facts, the Columbia Casualty Company contends, absolve it from liability in the premises. We cannot agree with the petitioner. Through the various transactions noted, the International Reinsurance Corporation assumed all the obligations of the Independence Indemnity Company, and became liable to the surviving wife of the deceased employee Ridgway when the Industrial Accident Commission made an award in her favor. The contract by which the absorption of the Independence was brought about was, in effect, not a contract of reinsurance, but a contract made for the benefit of third parties, and therefore rendered the International Reinsurance Corporation directly liable to the claimant, Mrs. Ridgway. (*Whitney* v. *American Ins. Co.*, 6 Cal. Unrep. 220 [56 Pac. 50, 52]; *Johannes* v. *Phenix Ins. Co.*, 66 Wis. 50 [27 N. W. 414, 57 Am. Rep. 249]; *Bethke* v. *Cosmopolitan Ins. Co.*, 262 Ill. App. 586; 14 Cal. Jur. 647, 648, also 602, 603.) But, contends the petitioner on this point, "the effect of the consolidation and subsequent transactions"—of and between the various indemnity companies— "was that the assets and obligations of both old constituent companies passed to the new Independence and, in turn, the assets and obligations of the new Independence were passed

on to International Reinsurance Corporation; the ratification of these agreements by respondents [insurance commissioner and Industrial Accident Commission] constituted a completed novation of the original obligation . . . from the old Independence . . . and finally to the International Reinsurance Corporation and released the Independence.'' Such result was not the consequence of the various transactions. In such a case there is no novation. (8 Couch on Insurance, p. 7420.) There is no showing, and apparently it was not a fact, that the respondents accepted or assented to the final situation brought about by the changes in some or any way which amounted to an agreement to accept the indemnity company, resulting at any stage in making the International alone liable in the premises. No novation resulted. In such a case there results a contract between the indemnity company and the beneficiary. (See *Glen* v. *Hope Mutual Life Ins. Co.*, 56 N. Y. 379; *Jones* v. *Commonwealth Cas. Co.*, 255 Pa. 566 [100 Atl. 450]; *County of Lyon* v. *First Nat. Bank*, 166 Minn. 109 [207 N. W. 138]; 20 Cor. Jur. 6.)

■ The petitioner, Columbia Casualty Company, was not discharged from liability to the beneficiary by the act of its principal, the Independence Indemnity Company, in procuring by merger the International Reinsurance Corporation to assume the carrier's obligations. (*Alliance Mutual Life Assur. Soc.* v. *Welch,* 26 Kan. 632; *State* v. *Wood,* 173 Minn. 406 [217 N. W. 360].) Neither did the procession of changes affecting the so-called old Independence Indemnity Company discharge petitioner. The argument that such result happened seems only technical. ■ The statute (*supra*) under which petitioner furnished and filed the first undertaking fixed the liability of petitioner as answering for the payment of ''awards of compensation rendered or to be rendered against said [old Independence Indemnity Company] by said Industrial Accident Commission under the terms of the workmen's compensation, insurance and safety act and acts amendatory thereof [for the period of one year], *without regard to the time when the injury upon which [the] award was based may have occurred.*'' [Italics added.] The purpose of the act, to protect the beneficiaries of workmen's compensation policies against the default or insolvency of insurance carriers issuing such policies by requiring such carriers to provide for the payment of such compensation, allows of no other

construction than that the surety is answerable to the beneficiary when default in payment of the award of compensation takes place, whether or not the injury occurred at a time when the surety was actually the surety for the carrier. The act and the undertaking, which must be renewed each year, have no direct relation to the injury suffered by the employee or to the time when he was injured. Both the act and the undertaking relate to, and the liability on the undertaking becomes available to, the beneficiary when an award has resulted and default has been made. ▆ The effect of the terms of the act clearly indicates that the liability which the Columbia Casualty Company undertook when it filed the undertaking for the old Independence Company on July 1, 1931, covered payment for the injuries occurring before that date. The undertaking filed by it one year later, as required by the act, embraced the entire liability under the first, or old, bond. The act (sec. 3) so provides. We are also of the view that the cases cited lend support to such construction. (*Alliance Mut. Life Assur. Soc.* v. *Welch, supra,* and *County of Lyon* v. *First Nat. Bank, supra.*)

Furthermore, if the transactions leading to the consolidation finally extinguished the old Independence Indemnity Company, it took place on September 16, 1931, when the first undertaking furnished by petitioner was in effect, and continued and perpetuated the obligation on the bond. The fact that Columbia Casualty Company did not know of the consolidation of the insurance carriers prior to the execution of its second, or July 1, 1932, bond does not affect the situation. ▆ Even assuming that there was any duty on the part of the insurance commissioner to notify the Columbia Casualty Company of the various changes that were takng place in the fortunes of the Independence Indemnity Company, old or new, which we cannot find and none has been shown to us, the failure of that official to notify the petitioner does not affect the rights of the beneficiary of the compensation award, who, in legal effect, is the real party in interest, in the effort to collect the award made for her benefit. Assuming, also, for the purpose of argument only, that the insurance commissioner may have been otherwise derelict in the performance of his duties in permitting the new Independence Company to do an insurance business in California, petitioner

cannot now take advantage of such dereliction as against the third party who is seeking payment of the award.

The International Reinsurance Corporation, at the time of the absorption of the new Independence, October 31, 1932, had procured, and there was in effect, a bond executed by the Union Indemnity Company, as required by the act of 1917. The International Corporation, having agreed to assume all the obligations of the new Independence Indemnity Company on default in the payment of the award, the beneficiary, Mrs. Ridgway, and the insurance commissioner, as trustee, could have proceeded against the Union Indemnity Company. At or about the time of the happening of the default, the International and the Union Indemnity Company, its insurance carrier, were both placed in the hands of receivers. The default and the insolvency of the International and its insurance carrier happened during the period of the year July 1, 1932–June 30, 1933, for which the petitioner Columbia Casualty Company executed and filed its second, or new, bond for the Independence Indemnity Company on July 1, 1932. The surety, petitioner, not being released by the fact that the International Reinsurance Corporation assumed the liabilities of the Independence Indemnity Company, and the default occurring during the period of petitioner's liability on the bond filed by it to enable the Independence Indemnity Company to carry on the business of writing compensation insurance in the state of California, petitioner must be held to the performance of the obligation it thus voluntarily assumed.

The award here attacked is affirmed.

Langdon, J., Curtis, J., Thompson, J., Conrey, J., and Shenk, J., concurred.

Rehearing denied.